## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHAWN M. KOWALYSHYN, ET AL. ) | CIVIL ACTION NO. |
| ) | 3:16-CV-00148-JAM |
| PLAINTIFFS, ) | |
| ) | |
| V. ) | |
| ) | |
| EXCELSIOR INSURANCE COMPANY, ) | |
| ET AL. ) | |
| DEFENDANTS. ) | MAY 8, 2018 |

## DEFENDANT KEMPER INDEPENDENCE INSURANCE COMPANY'S
## MOTION FOR STAY WITH SUPPORTING MEMORANDUM OF LAW

The defendant, Kemper Independence Insurance Company ("Kemper"), respectfully moves this Court for a stay of all proceedings in this action pending the Connecticut Supreme Court's acceptance and resolution of a certified question that will determine the rights of the parties in this matter. On April 30, 2018, the Court (Underhill, U.S.D.J.), in the case captioned Karas v Liberty Insurance Corp., No. 3:13-cv-01836 (SRU), certified the question of what constitutes a "substantial impairment of structural integrity" to the Connecticut Supreme Court. See Order, attached as **Exhibit A**. The question as framed by Judge Underhill is pivotal and necessary for the purposes of applying the collapse provision of the Kemper homeowners insurance policy to the claims of the plaintiffs herein.

As more fully set forth below, a stay of this action would serve the dual purpose of promoting judicial economy and providing clarity to the litigants. On May 4, 2018, undersigned counsel discussed this motion with counsel for the plaintiffs, Jeffrey Lindequist, and he indicated the plaintiffs take no position on the motion.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

I.   **FACTUAL BACKGROUND**

The plaintiffs allege that they own and reside at a premises located at 29 Lindsey Lane, Willington, CT (the "Premises"). See Second Amended Complaint, Doc. 51, ¶ 1. They further allege that the Premises was insured pursuant to policies of homeowners insurance issued by Kemper and one other insurer. Id., ¶¶ 6, 52.[1] The plaintiffs claim that in August of 2015, they noticed a series of horizontal and vertical cracks throughout most of the concrete basement walls of the Premises. Id., ¶ 54. The plaintiffs further allege that they undertook an investigation of this condition and, as a result, learned that the pattern cracking was due to a chemical reaction in the concrete, that this chemical reaction would continue to progressively deteriorate the concrete, that the basement walls suffered a substantial impairment of structural integrity and eventually, their home will fall into its basement. Id., ¶¶ 55-61.

The plaintiffs allege that they notified Kemper on September 22, 2015 of the condition of their basement walls and thus, made a timely claim for coverage of the loss under their Kemper homeowners policy. Id. ¶¶ 62-63. Kemper denied the plaintiffs' claim for coverage on January 14, 2016. Id. ¶ 64. The plaintiffs allege that Kemper breached its contractual obligations under the policy of insurance. Id. ¶ 67.[2]

II.   **PROCEDURAL BACKGROUND**

After discovery, Kemper moved for summary judgment on all claims against it. See Doc. 60. On February 13, 2018, this Court denied the motion relative to the breach

---

[1] The other insurer defendant successfully moved for summary judgment and is out of the case. See Doc. 82.

[2] The plaintiffs' alleged common law and statutory bad faith claims are no longer a part of this case. See Doc. 82.

- 2 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

of contract claim finding, in relevant part, "that a reasonable jury could conclude that the substantial impairment occurred during the several years that elapsed from 2007-2011 at which time the older version of the Kemper policy and its pre-amended definition of 'collapse' was in force." Id. at p. 9.

The joint trial memorandum in this case is due by June 15, 2018, a pretrial conference is scheduled for June 21, 2018, and jury selection will commence on July 16, 2018. See Doc. 87.

### III.   INTERVENING HISTORICAL BACKGROUND

Since the partial denial of Kemper's summary judgment three months ago, there have been several developments in crumbling foundation cases pending in Connecticut. As noted above, Judge Underhill has certified the pivotal question that will be at issue in the case at bar. See **Exhibit A**. It is important to note that plaintiffs' counsel herein, Attorney Lindequist, is also counsel for the plaintiffs in Karas and consented to certification therein. See Karas, supra, Doc. 75 ("The Karases . . . believe that it is in the interest of justice that their case be certified."), attached as **Exhibit B**. See also, **Exh. A**, p. 1 of 9 ("All parties to both cases now support certification.")

On April 10, 2018, in anticipation of certification, the Court (Bryant, U.S.D.J.) issued an order in Gladysz v Liberty Mut. Fire Ins. Co., No. 3:16-cv-00917 (VLB) administratively closing the case "until the Connecticut Supreme Court rules on the question to be certified." See **Exhibit C**. Further, on May 1, 2018, a Connecticut trial court (Sferrazza, J.) stayed another crumbling foundation trial, upon Kemper's motion, that was to have commenced with jury selection on May 8, 2018 in Piacentini v. The

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Travelers Home and Marine Ins. Co., Civ. Doc. No. TTD-CV-16-6010341-S. See Exhibit D.[3]

### IV. STANDARD

This Court has inherent power to stay the proceedings in a case before it. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936); accord Clinton v. Jones, 520 U.S. 681, 706-08, 117 S. Ct., 1636, 137 L. Ed. 2d 945 (1997). The decision of whether to issue a stay is within the discretion of the district court. LaSala v. Needham & Co., Inc., 399 F. Supp 2d 421, 427 (S.D.N.Y. 2005).

"There are several reasons why a court might decide to stay proceedings in a lawsuit. For example, a court might, in the interest of judicial economy, enter a stay, pending the outcome of proceedings which bear upon the case, even if such proceedings are not necessarily controlling of the action that is to be stayed." LaSala v. Needham & Co. Inc., supra, 399 F. Supp. 2d at 427.

Under appropriate circumstances, where the issues presented in different causes are sufficiently intertwined, a litigant in one cause "may be compelled to stand aside while a litigant in another settles the rules of law that will define the rights of both." Landis v. North American Co., supra, 299 U.S. at 255. It is not a requirement to the above doctrine that the issues in the two causes be exactly identical. Id. ("we find

---

[3] The sole remaining carrier in the Piacentini case is Kemper, with Attorney Lindequist representing the Piacentinis and undersigned counsel representing Kemper. Although not facially apparent from the Piacentini order of stay, it entered with the verbal agreement/consent of Attorney Lindequist.

- 4 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

ourselves unable to assent to the suggestion that before proceedings in one suit may be stayed to abide the proceedings in another, the parties to the two causes must be shown to be the same and the issues identical.")

A court considers several factors when exercising the discretion referenced above. See State of Conn. ex. rel. Blumenthal v. BPS Petroleum Distributors, Inc., 1991 WL 177657 (D. Conn 1991). The BPS Petroleum court examined several factors, to wit, the plaintiff's interests in proceeding and potential prejudice of delay, the burden imposed upon the defendants, the convenience of the court and public interest. These factors are addressed in the Argument section below.

### V.     ARGUMENT

#### A.     Plaintiffs' Interest in Proceedings and Potential Prejudice of Delay

When examining this factor, the BPS Petroleum court noted that "stays in proceedings may result in prejudice to plaintiffs because '[w]itnesses relocate, memories fade, and persons allegedly aggrieved are unable to seek vindication or redress for indefinite periods of time on end'." BPS Petroleum, supra, 1991 WL 177657 at *2 (citations omitted). Kemper respectfully submits that this is not the type of witness-intensive case contemplated in BPS Petroleum. The plaintiffs herein allege that they bought the subject premises in 2007 and it was built in 1987. See Doc. No. 51, p. 10 of 19, ¶ 51. Further, the plaintiffs allege that their basement walls suffered a "substantial impairment to their structural integrity" sometime "between the mid to late 2000's" and 2016. See Doc. No 51 p. 12 of 15 ¶ 59. The Court can deduct that the destructive process at issue, one allegedly occurring over the last 15 years, does not have any witnesses in the traditional sense of the word and thus, there is no prejudice of delay.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Further, plaintiffs' counsel herein has already consented to the certification in Karas and consented to a stay of the trial in the Piacentini matter, the latter involving Kemper and identical policy language. As such, there does not appear to be any good faith basis to argue prejudice herein.

### B. Burden Imposed Upon The Defendant

Kemper respectfully submits that this is exactly the type of situation where the Court should exercise its discretion in staying the above-captioned action. In the Karas certification order, Judge Underhill noted that the question presented "has the potential to resolve a large number of lawsuits pending throughout the state." See **Exh. A**, p. 2 of 9 (noting in footnote one "a dozen or more federal lawsuits" and over 40 state court cases). Each insurer that issued a policy containing the "old" collapse language is litigating the same issue, namely, what constitutes the "substantial impairment of structural integrity" standard articulated by the Supreme Court in Beach v. Middlesex Mutual Assurance Co., 205 Conn. 246 (1987) and whether an insured premises meets this standard.

As the Supreme Court has not defined the phrase "substantial impairment of structural integrity" in 31 years, each of the carriers in the individually pending concrete cases is purporting to assert its own interpretation of what definition should be used by the court. Now that certification has occurred, insurers like Kemper should not be forced to incur the time and expense of preparing pretrial motions, preparing the joint trial memorandum, selecting a jury, trying the case to dismissal or verdict, and potentially preparing post-trial motions and/or an appeal to the Second Circuit. Because this Court would face nearly identical issues during the course of trial in this matter,

Further, plaintiffs' counsel herein has already consented to the certification in Karas and consented to a stay of the trial in the Piacentini matter, the latter involving Kemper and identical policy language. As such, there does not appear to be any good faith basis to argue prejudice herein.

### B. Burden Imposed Upon The Defendant

Kemper respectfully submits that this is exactly the type of situation where the Court should exercise its discretion in staying the above-captioned action. In the Karas certification order, Judge Underhill noted that the question presented "has the potential to resolve a large number of lawsuits pending throughout the state." See **Exh. A**, p. 2 of 9 (noting in footnote one "a dozen or more federal lawsuits" and over 40 state court cases). Each insurer that issued a policy containing the "old" collapse language is litigating the same issue, namely, what constitutes the "substantial impairment of structural integrity" standard articulated by the Supreme Court in Beach v. Middlesex Mutual Assurance Co., 205 Conn. 246 (1987) and whether an insured premises meets this standard.

As the Supreme Court has not defined the phrase "substantial impairment of structural integrity" in 31 years, each of the carriers in the individually pending concrete cases is purporting to assert its own interpretation of what definition should be used by the court. Now that certification has occurred, insurers like Kemper should not be forced to incur the time and expense of preparing pretrial motions, preparing the joint trial memorandum, selecting a jury, trying the case to dismissal or verdict, and potentially preparing post-trial motions and/or an appeal to the Second Circuit. Because this Court would face nearly identical issues during the course of trial in this matter,

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Kemper respectfully submits that this action should be stayed until the Supreme Court rules, as it will provide much needed guidance with respect to the definition of the applicable standard.

In fact, on November 10, 2016, Judge Underhill, currently presiding over the Karas case, predicted the quagmire created by the absence of any definition of the Beach "substantial impairment of structural integrity" standard. Judge Underhill questioned plaintiff's counsel herein:

> THE COURT: So what do I charge – what do I charge the jury in this case? Substantial impairment means . . .
>
> I'm going to have a dispute of law about what that means. There's no question that Beach says what it says, if it's substantially impaired there's a problem, but I've got an argument on one side that's a factual issue, and the facts presumably are there were cracks in the basement, but the Roberts were still able to use it. It didn't interfere with their use of the building. They did not move out. They did not –
>
> MR. LINDEQUIST: And Beach explicitly held that substantial impairment does not require that a building be uninhabitable.
>
> THE COURT: No, no, I know, but on the other side I've got an argument that as a matter of law unless there is a significant physical impairment to the building, then – as defined, in effect, by the cases relied upon by Beach, that this shouldn't reach a jury because it's –
>
> MR. LINDEQUIST: It's not a matter of the cases that Beach relied upon to define the terms as.
>
> THE COURT: How does Beach define the term?
>
> MR. LINDEQUIST: As substantial impairment to the structural integrity of the home.
>
> THE COURT: No, how does it define that phrase?
>
> MR. LINDEQUIST: Substantial impairment is a factual issue for the jury.

- 7 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

THE COURT: No, no, that's not the question. It may be. How does Beach define the phrase "substantial impairment"?

MR. LINDEQUIST: It doesn't.

THE COURT: It doesn't, right. Don't we need some help? How am I going to charge a jury when they come back with a note that says, "Well, what do you mean by 'substantial impairment'? Are we supposed to just guess"?

"No. It's a factual issue, but here's the guidance, Ladies and Gentlemen, about whether the facts are sufficient to meet the legal standard, and the legal standard is . . ." fill in the blank. That's what we need the Connecticut Supreme Court to do, fill in the blank. "Substantial impairment" means "X." We can't tell that from Beach, can we?

MR. LINDEQUIST: I think that the Connecticut Supreme Court elected to leave it as a factual issue, and I think they can do that.

THE COURT: Okay. Take any factual issue. If you don't have the law to charge the jury, how does the jury decide the factual issue except by speculating?

MR. LINDEQUIST: With the guidance of expert testimony.

THE COURT: No. Your expert is going to come in and say, "The building was – in my opinion the building was substantially impaired." Their expert is going to come in and say, In my opinion the building was not substantially impaired. Neither of them is going to define "substantially impaired." So the jury is going to either speculate or flip a coin or "I like that expert better than the other," or whatever. Don't we need a standard to permit the jury to make the appropriate factual determination?

MR. LINDEQUIST: I believe that, as I said, I believe that Beach has provided the guidance that it provides and –

THE COURT: Well, that's true by definition.

MR. LINDEQUIST: Sure.

THE COURT: Every decision provides the guidance it provides. What Beach doesn't do is provide any guidance on what it means to be substantially impaired. That's the problem I have. You're probably going to get to a jury, but when you get to a jury, what do I tell them?

- 8 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

See Roberts v. Liberty Mutual Ins. Co., No. 3:13-cv-00435(SRU), Transcript of Motion Hearing, pp. 7-10 of 29 (Nov. 10, 2016) (attached as **Exhibit E**).

The defendant respectfully submits that staying the case herein, and awaiting a clarifying decision from the Connecticut Supreme Court, should eliminate the burden imposed upon Kemper if it proceeded to trial.

### C. Convenience of the Court

"The third factor refers to a court's attempts to avoid duplicative judicial effort whenever possible." BPS Petroleum, supra, 1991 WL 177657 at *2. In the case at bar, one of the narrow issues to be litigated at the July, 2018 trial is "whether the substantial impairment occurred during the several years that elapsed from 2007-2011 at which time the older version of the Kemper policy and its pre-amended definition of 'collapse' was in force." See Doc. 82, p. 9 of 16.

Judge Bryant recognized the convenience to the Court when the administrative closure order issued in Gladysz, supra:

> **[T]he Court finds that deferral of decision on the pending motion for summary judgment in this action is warranted by the likely clarity a Connecticut Supreme Court ruling will provide.**
>
> **Insofar as the Court cannot adjudicate this case until the Connecticut Supreme Court rules on the question to be certified**, this case is closed without prejudice to either party moving to reopen within 90 days of a ruling of the Connecticut Supreme Court. See **Exh. C**, pp. 4-5 (emphasis supplied).

A stay in this case would avoid the potential for duplicative judicial effort. Once the Supreme Court defines "substantial impairment," this Court can provide clear guidance to the jury empaneled to hear this case, avoiding a possible mistrial, appeal, or proceedings on remand.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

### D. <u>Public Interest</u>

Judge Underhill stated in his order certifying the question to the Connecticut Supreme Court, "I also think that certification is warranted because the concrete collapse cases 'are plainly of great important to the State.' . . . Not only is '[i]nsurance . . . an important industry in Connecticut,' . . . but also the concrete collapse issue affects thousands of Connecticut residents and 'implicates broad questions of Connecticut public policy.'" <u>See</u> **Exhibit A**.

## VI. CONCLUSION

The Connecticut Supreme Court's determination of what constitutes "substantial impairment of structural integrity" will provide invaluable guidance for the trial in this matter. Having consented to both certification in <u>Karas</u> and a stay of the trial in <u>Piacentini</u>, plaintiffs' counsel has already agreed with this premise. Based on the foregoing, Kemper respectfully submits that this case should be stayed pending the Supreme Court's acceptance and decision of the question certified by Judge Underhill.

> Respectfully submitted,
> **THE DEFENDANT,**
> **KEMPER INDEPENDENCE**
> **INSURANCE COMPANY**
> By: ___/s/Daniel P. Scapellati_____
> Daniel P. Scapellati
> Fed. Bar #ct03855
> Carl R. Ficks, Jr.
> Fed. Bar #ct03342
> HALLORAN & SAGE LLP
> 225 Asylum Street
> Hartford, CT 06103
> Phone: 860-522-6103
> Fax:    860-548-0006
> scapellati@halloransage.com
> ficks@halloransage.com
> Its Attorneys

One Goodwin Square
225 Asylum Street
Hartford, CT 06103


HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## CERTIFICATION

This is to certify that on this 8th day of May, 2018, a copy of the foregoing Motion for Stay was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

Michael D. Parker, Esq.
Jeffrey R. Lindequist, Esq.
Lindsay Britton, Esq.
Law Office of Michael D. Parker
One Monarch Pl., Ste. 2200
Springfield, MA 01144-2220

Philip T. Newbury, Jr., Esq.
Kieran W. Leary, Esq.
Howd & Ludorf
65 Wethersfield Ave.
Hartford, CT 06114-1190

/s/Daniel P. Scapellati
Daniel P. Scapellati

5351185v.1

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105